IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3349-FL

| | | |
|---|---|---|
| ANDRE EUGENE LESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BRYANT C. ELLIOT, Unit Manager, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 33) pursuant to Federal Rule of Civil Procedure 56. The motion was briefed fully and in this posture the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint December 18, 2023, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant Bryant C. Elliot ("Elliot") interfered with his mail in violation of the First Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages together with various forms of injunctive relief.

Following a period of discovery, and in accordance with the court's case management order, defendant filed the instant motion for summary judgment. Defendant argues that plaintiff's claims fail on merits where he shows only isolated incidents of mail interference, that he is entitled

---

[1] The court constructively amends the case caption to reflect dismissal of formerly named defendants United States Postal Service, Legal Mail Clerk, Warden Everette, unknown Doe #1, Farrah L. Parks, and Mary L. Wallace.

to qualified immunity, and that plaintiff failed to exhaust administrative remedies. In support of the motion, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) affidavit of Kimberly Grande, the executive director of the North Carolina Department of Adult Correction's ("DAC") Inmate Grievance Resolution Board; 2) plaintiff's administrative grievance records; 3) defendant's personal declaration, 4) DAC's inmate mail policy; and 5) additional DAC records regarding plaintiff.

Plaintiff responded in opposition to the instant motion, arguing that the administrative grievance system was not available to him, that genuine disputes of material fact preclude summary judgment on his mail interference claims, and that defendant is not entitled to qualified immunity. In addition, plaintiff argues that he was not afforded sufficient time to complete discovery, and that the court erred by dismissing his claims for retaliation and other constitutional violations during earlier stages of these proceedings. In support, plaintiff relies upon memorandum of law, opposing statement of facts, and two appendices of exhibits thereto. Plaintiff's appendices include hundreds of pages of documents, many of which have no discernible connection to this case. As pertinent to the instant claims regarding interference with mail, plaintiff offers administrative grievance records, copies of mail that allegedly was opened outside his presence, DAC policies governing inmate mail, and correspondence between plaintiff and the warden of the Pasquotank Correction Institution ("PCI").

**STATEMENT OF FACTS**

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. On October 31, 2023, while housed at PCI, plaintiff received mail from North Carolina Prisoner Legal Services ("NCPLS") that had been opened outside his presence. (Pl's Ex. 2 (DE

2

49-3) at 3).[2]  "There was a small yellow note attached on the . . . white envelope from [correctional officer] N. Fennell (signed and dated 10-31-2023)" that stated "opened in the post not by staff."  (Id.).

Notwithstanding this note, defendant Elliot initially told plaintiff that he had opened plaintiff's legal mail "by accident because he thought it belonged to him."  (Id.).  Later that same day, defendant Elliot corrected himself and stated he did not open plaintiff's mail from NCPLS, and that he was thinking about a different piece of mail.  (See id.).  According to plaintiff, the NCPLS mailing did not include a packet designed to assist inmates with filing civil rights lawsuits. (See id.).

**DISCUSSION**

A.      Plaintiff's Rule 56(d) Request

As a threshold issue, plaintiff argues that he was not afforded sufficient time for discovery prior to defendants' motion for summary judgment.  Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: defer considering the motion [for summary judgment] or deny it."  Fed. R. Civ. P. 56(d)(1).  "Rule 56(d) mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition."  Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014).  Thus, "district courts should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition."

---

[2]      Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

Farabee v. Gardella, 131 F.4th 185, 193 (4th Cir. 2025).

Here, the court provided the parties approximately five months to complete discovery. (DE 24, 25). And during this period plaintiff failed to serve discovery requests in sufficient time to allow defendant to respond to same. (See Pl's Ex. 8 (DE 49-9) at 44). Accordingly, the court denies plaintiff's request for relief under Rule 56(d). Compare Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021) (stating district court erred by granting summary judgment where plaintiff was proceeding pro se and he was not afforded any opportunity for discovery). In addition, and in the alternative, plaintiff fails to show that additional discovery would change the result reached below on the merits. See McCray v. Maryland Dep't of Transp., Maryland Transit Admin., 741 F.3d 480, 484 (4th Cir. 2014) (explaining district court may deny relief under Rule 56(d) "when the information sought would not by itself create a genuine issue of material fact").

B.      Summary Judgment Motion

1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[3]

---

[3]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2.      Analysis

Plaintiff asserts that defendant violated his constitutional rights by opening the mail he received from NCPLS October 31, 2023, and removing the civil litigation packet therein.   But the evidentiary record shows that this mailing was opened before it arrived at PCI.   (See, e.g., Pl's Ex. 2 (DE 49-3) at 3, 6).   While it is true that defendant Elliot stated that he opened the mail, he later corrected himself and explained he was referring to a different piece of mail which plaintiff does not challenge in this action.   (See id. at 3).   Moreover, the note on the mail, signed by officer N. Fennell and not defendant Elliot, confirms that it arrived to PCI in that condition.   (See id. at 3, 6).   Plaintiff offers no competent summary judgment evidence indicating defendant Elliot intentionally interfered with this piece of mail.   See Harrison v. Haze, 961 F.3d 654, 659 (4th Cir. 2020) (indicating plaintiff must show intentional interference with mail to survive motion for summary judgment in this context).   Moreover, plaintiff's speculative assertions that both N. Fennel and Elliot conspired to open his mail and remove the civil litigation packet cannot create a triable issue of fact.   See Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005) (noting that "judgment as a matter of law must be entered" when the non-moving party relies upon only speculation and conjecture to resist motion for summary judgment).   Accordingly, defendant Elliot's motion is granted as to the October 31 incident.

Defendant Elliot raises the affirmative defense that plaintiff failed to exhaust administrative remedies as to any remaining claims of interference with his mail.   The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006).

Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83, 90. Thus, an inmate has not exhausted administrative remedies unless he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result. See id. at 90.

The DAC's administrative remedy procedure ("ARP") prescribes a three-step procedure that inmates must complete to exhaust administrative remedies. (See Grande Decl. (DE 36-1) at 1–2); see also Moore, 517 F.3d at 721 (describing policy). The inmate initiates the procedure by submitting written grievance on form DC-410 to designated facility staff. ("step one"). (Grande Decl. (DE 36-1) at 2). If the inmate is not satisfied with the decision reached at the step-one level, he may appeal the decision to facility management ("step two"). (Id.). If the inmate is not

satisfied with the decision reached by the facility head, he may appeal to the inmate grievance examiner ("step three"). (Id.). The decision by the inmate grievance examiner is the final step of the procedure. (Id.).

Here, the undisputed record evidence shows that plaintiff failed to exhaust administrative remedies regarding any mail interference incidents that allegedly occurred in December 2023. (See id. at 2–3; Exs. 1–12, Grande Decl. (DE 36-2 to DE 36-13). And while plaintiff offers various conclusory arguments suggesting the administrative remedy process was not available to him or that he submitted additional grievances beyond those provided in the current record, such evidence fails to establish a triable issue of fact on the exhaustion issue. See Wai Man Tom v. Hospitality Ventures, 980 F.3d 1027, 1037 (4th Cir. 2020) (explaining "conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion"). Moreover, the court carefully reviewed the hundreds of pages of documents that plaintiff submitted with his opposition to the instant motion, and none of them show that the administrative remedy process was unavailable or that he submitted grievances regarding the December 2023 incidents. (See DE 48, 49, and exhibits thereto). As a result, plaintiff failed to exhaust administrative remedies as to these mail interference claims.

Finally, plaintiff requests that the court reconsider its August 6, 2024, order to the extent the court dismissed additional claims beyond the mail interference claims addressed herein. The

8

court declines to modify that order in the circumstances presented here.   See Fed. R. Civ. P. 54(b);

Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003) (providing standard).

In sum, defendant has shown that he did not interfere with the NCPLS mail on October 31,

2023, and that plaintiff failed to exhaust administrative remedies as to remaining mail interference

claims.   In these circumstances, defendant is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 33) is GRANTED.

The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

9